IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER A. GARDEA, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | EP-12-CV-158-KC |
| | § | |
| DIALAMERICA MARKETING, INC., | § | |
| | § | |
| **Defendant**. | § | |

## ORDER

On this day, the Court considered Defendant DialAmerica Marketing, Inc.'s

("Defendant") Motion for Summary Judgment and Brief in Support ("Motion"), ECF No. 14.

For the reasons set forth herein, the Motion is **GRANTED** in part and **DENIED** in part.

### I.     BACKGROUND

Christopher A. Gardea ("Plaintiff") began working for Defendant on August 30, 2010.

Mot. Ex. 1 ("Defendant's Proposed Undisputed Facts") ¶ 2; Pl.'s Resp. to Def.'s Proposed Facts

¶ 2, ECF No. 21.  Plaintiff worked in Defendant's El Paso, Texas, call center as a customer

service and sales representative.  Def.'s Proposed Undisputed Facts ¶ 2; Pl.'s Resp. to Def.'s

Proposed Facts ¶ 2.  Soon after being hired, Plaintiff received, read, and affirmed his

understanding of Defendant's employee information booklet.  Def.'s Proposed Undisputed Facts

¶ 2; Pl.'s Resp. to Def.'s Proposed Facts ¶ 2.  This booklet contains Defendant's employee

policies.  Def.'s Proposed Undisputed Facts ¶ 2; Pl.'s Resp. to Def.'s Proposed Facts ¶ 2.

As a new employee, Plaintiff attended training sessions on how to effectively market products.  *See* Def.'s Proposed Undisputed Facts ¶ 5; Pl.'s Resp. to Def.'s Proposed Facts ¶ 5. During one such training session, Plaintiff loudly stated that "[t]his is really stupid."  Def.'s Proposed Undisputed Facts ¶ 5; Pl.'s Resp. to Def.'s Proposed Facts ¶ 5.  Because of this comment, a supervisor, Linda Rivera ("Rivera"), immediately met with Plaintiff and spoke to him about professionalism.  Def.'s Proposed Undisputed Facts ¶ 5; Pl.'s Resp. to Def.'s Proposed Facts ¶ 5.  Rivera warned Plaintiff that further unprofessional conduct could lead to him being "replaced."  Def.'s Proposed Undisputed Facts ¶ 5; Pl.'s Resp. to Def.'s Proposed Facts ¶ 5.  Plaintiff then admitted that his comment was inappropriate.  Def.'s Proposed Undisputed Facts ¶ 5; Pl.'s Resp. to Def.'s Proposed Facts ¶ 5.  The meeting ended shortly thereafter.  Def.'s Proposed Undisputed Facts ¶ 5; Pl.'s Resp. to Def.'s Proposed Facts ¶ 5. However, approximately ten minutes later, Plaintiff once again spoke to Rivera.  Def.'s Proposed Undisputed Facts ¶ 5; Pl.'s Resp. to Def.'s Proposed Facts ¶ 5.  Plaintiff then disclosed to Rivera that he was taking medications for HIV and that his medications caused psychological side effects and outbursts, such as his earlier comment.  *See* Def.'s Proposed Undisputed Facts ¶ 5; Pl.'s Resp. to Def.'s Proposed Facts ¶ 5.

Two months later, in November 2010, Plaintiff filed an internal complaint alleging that Rivera had disclosed his HIV status to co-workers.  *See* Def.'s Proposed Undisputed Facts ¶ 6; Pl.'s Resp. to Def.'s Proposed Facts ¶ 6.  An internal investigation into Plaintiff's complaint was led by another manager, Arelys Roberts ("Roberts").  *See* Def.'s Proposed Undisputed Facts ¶ 6; Pl.'s Resp. to Def.'s Proposed Facts ¶ 6.  The parties dispute whether the internal investigation corroborated Plaintiff's complaint.  *See* Def.'s Proposed Undisputed Facts ¶ 6; Pl.'s Resp. to

Def.'s Proposed Facts ¶ 6.  However, the parties appear to agree that in December 2010, Plaintiff requested that the internal investigation be terminated.  *See* Def.'s Proposed Undisputed Facts ¶ 6; Pl.'s Resp. to Def.'s Proposed Facts ¶ 6; App. in Support of Def.'s Mot. for Summ. J., ECF No. 14-2 ("Defendant's Appendix"), Ex. 7, at 20:18-21.

In March 2011, Plaintiff requested an extended medical leave of absence for surgery related to his HIV condition.  Def.'s Proposed Undisputed Facts ¶ 11; Pl.'s Resp. to Def.'s Proposed Facts ¶ 11.  At this time, Plaintiff notes that he told manager Estrada "that she was discriminating against [him] because of [his] HIV status."  Pl.'s Aff. 2.  Even though Plaintiff was not eligible for a leave of absence under the Family and Medical Leave Act ("FMLA"), Defendant granted Plaintiff a leave of absence from March 17, 2011, until April 15, 2011.  Def.'s Proposed Undisputed Facts ¶ 11; Pl.'s Resp. to Def.'s Proposed Facts ¶ 11.  Plaintiff did not return to work on April 15, 2011.  *See* Def.'s Proposed Undisputed Facts ¶ 11; Pl.'s Resp. to Def.'s Proposed Facts ¶ 11.  Rather, on April 20, 2011, Plaintiff presented Defendant with a doctor's note stating that he would not be able to return to work until May 4, 2011.  Def.'s Proposed Undisputed Facts ¶ 11; Pl.'s Resp. to Def.'s Proposed Facts ¶ 11.  Defendant granted this additional leave and Plaintiff returned to work on May 5, 2011.  Def.'s Proposed Undisputed Facts ¶ 11; Pl.'s Resp. to Def.'s Proposed Facts ¶ 11.   When he did return to work, Plaintiff would occasionally need to go home early for medical reasons.  Pl.'s Resp. to Def.'s Mot. for Summ. J. and Brief in Support ("Response") 3, ECF No. 15 (citing App. in Support of Pl.'s Resp. to Def.'s Mot. for Summ. J., ("Plaintiff's Appendix"), Ex. 1 ("Plaintiff's Affidavit" or "Affidavit"), ECF No. 15-1).  When he made such requests, Plaintiff states that a manager,

Suzette Estrada ("Estrada"), would give him "grief" and "ask [him] if [he] was 'seriously doing this again.'"  Pl.'s Aff. 2

Next month, on June 10, 2011, Plaintiff was suspended for violating Defendant's "clean desk policy."  Def.'s Proposed Undisputed Facts ¶¶ 12-13; Pl.'s Resp. to Def.'s Proposed Facts ¶¶ 12-13.  The clean desk policy, as explained in the employee information booklet, states that cellular telephones and other electronic equipment are not allowed at desks in the call center. Def.'s Proposed Undisputed Facts ¶ 12; Pl.'s Resp. to Def.'s Proposed Facts ¶ 12; Def.'s App. Ex. 4, at 59 (the clean desk policy).  The rationale for this policy is that such devices could be used to record the confidential personal and business information—such as a home address or a credit card number—of Defendant's customers.  *See* Def.'s Proposed Undisputed Facts ¶ 12; Pl.'s Resp. to Def.'s Proposed Facts ¶ 12.  Plaintiff admits that there are no exceptions to this clean desk policy.  Def.'s Proposed Undisputed Facts ¶ 12; Pl.'s Resp. to Def.'s Proposed Facts ¶ 12.  Still, Plaintiff indicates that he often saw other employees using their cellular telephones during work to send text messages.  Pl.'s Aff. 3.  Regardless, Plaintiff was suspended for five days for having a cellular telephone at his desk.  *See* Def.'s Proposed Undisputed Facts ¶ 13; Pl.'s Resp. to Def.'s Proposed Facts ¶ 13.  Although he does not dispute that he violated the clean desk policy, Plaintiff notes that he had a cellular telephone at his desk as a timer to remind him to take his HIV medications.  *See* Pl.'s Resp. to Def.'s Proposed Facts ¶ 13.  After he suspended for violating the clean desk policy, Plaintiff states that he "called the corporate hotline to complain about [this] disparate treatment."  Pl.'s Aff. 3.

That same month, June 2011, Plaintiff was terminated for violating Defendant's "no call / no show" attendance policy.  *See* Def.'s Proposed Undisputed Facts ¶¶ 14-15; Pl.'s Resp. to

Def.'s Proposed Facts ¶¶ 14-15.  Although seemingly not recorded in the employee information booklet, Defendant's attendance policy required Plaintiff to notify Defendant of his absence from work before the beginning of a shift.  *See* Def.'s Proposed Undisputed Facts ¶ 14; Pl.'s Resp. to Def.'s Proposed Facts ¶ 14.  On June 23, 2011, Plaintiff violated this attendance policy for a second time.  Def.'s Proposed Undisputed Facts ¶ 15; Pl.'s Resp. to Def.'s Proposed Facts ¶ 15. On this occasion, Plaintiff failed to notify Defendant, prior to the beginning of his shift, that he would not be able to make his shift.[1]  Def.'s Proposed Undisputed Facts ¶ 14; Pl.'s Resp. to Def.'s Proposed Facts ¶ 14.  Both parties agree that this failure to abide by the attendance policy was the official reason for Plaintiff's termination.  Def.'s Proposed Undisputed Facts ¶ 15; Pl.'s Resp. to Def.'s Proposed Facts ¶ 15.

On July 7, 2011, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Defendant for discrimination and retaliation.  Def.'s Proposed Undisputed Facts ¶ 16; Pl.'s Resp. to Def.'s Proposed Facts ¶ 16.  As a result of this charge, Plaintiff, on August 17, 2011, received a letter from the EEOC notifying him of his right to sue under the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII").  *See* Def.'s App. Ex. 17, at 1 (EEOC right to sue letter).  Plaintiff also filed a charge for discrimination and retaliation with the Texas Workforce Commission ("TWC") for "retaliation for requesting reasonable accommodation(s) for [his] disability" in violation of the ADA.  *See* Def.'s App. Ex. 16, at 1 (TWC charge).

---

[1] Although Plaintiff states in his own Affidavit that he called in a few minutes prior to the end of his shift, Plaintiff still agrees that he violated the attendance policy.  *See* Pl.'s Aff. 3 (statement by Plaintiff attesting that he called in a few minutes prior to the end of his shift).

On February 24, 2012, Plaintiff brought suit in County Court at Law Number 3 of El Paso County, Texas. *See* Def.'s App. Ex. 18 ("Plaintiff's Petition" or "Petition"), at 1. In his state court Petition, in a section titled "Causes of Actions," Plaintiff numbers two causes of actions: (1) "Disability Discrimination, Hostile Work Environment, and Retaliation" and (2) "Family Medical Leave Act Violations - Wrongful Termination, Retaliation, and Interference." *Id*. at 4. The first claim is brought under the Texas Commission on Human Rights Act ("TCHRA") while the second claim is brought under the federal FMLA. *Id*. In a different section of his Petition, Plaintiff also indicates that "each time he was absent from work due to his disability and when accommodations were required[,] employees of the Defendant were unwilling to adhere to the requests." *Id*. at 3.

On April 30, 2012, Defendant removed the lawsuit to this Court, based on both federal question and diversity jurisdiction grounds. Def.'s Notice of Removal 1-4, ECF No. 1.

Then, on January 22, 2013, Defendant moved for summary judgment. *See* Mot. 14. Plaintiff timely submitted his Response in opposition to summary judgment on February 5, 2013. Resp. 18. As part of an appendix filed with the Response, Plaintiff included an Affidavit. *See generally* Pl.'s Aff. Defendant filed its timely Reply on February 12, 2013. Def.'s Reply and Br. in Support of Def.'s Mot. for Summ. J. ("Reply") 11, ECF No. 19.

## II. DISCUSSION

### A. Defendant's Evidentiary Objections

Defendant raises a number of evidentiary objections to five statements made by Plaintiff in his Affidavit. *See generally* Def.'s Objections to Pl.'s Summ. J. Evidence and Mot. to Strike ("Defendant's Objections"), ECF No. 20. Specifically, Defendant characterizes these statements

as shams, containing hearsay, or lacking a basis in personal knowledge.  *Id.* at 4-8.  Plaintiff

counters these assertions with a variety of responses.  ***See generally*** Pl.'s Resp. to Def.'s

Objections to Pl.'s Summ. J. Evidence and Mot. to Strike ("Plaintiff's Response to Defendant's

Objections"), ECF No. 23.

       Because only the fifth statement objected to by Defendant is relevant to this Order, the

Court only addresses that statement, a portion of Plaintiff's Affidavit in which he states:

> I know of other employees who did not show up to work and did not call in prior
> to their shifts.  Specifically, I know that Christy [Nevarez] would often not show
> up to work and would not call in to report her absences.  I know this because
> Christy [Nevarez] would mention that she missed time from work so she could
> continue receiving public assistance.

Pl.'s Aff. 3.

       Defendant objects to this statement on two grounds.  First, Defendant objects that

Plaintiff has no basis in personal knowledge as to whether Nevarez did in fact call in or if she

was disciplined for her absences.  Def.'s Objections 8.  And second, Defendant objects that

Plaintiff's recitation of Nevarez's statements is inadmissible hearsay.  *Id.*  Plaintiff's only

response to either argument is that the whole statement is based on his personal knowledge and

therefore is admissible under the present sense impression hearsay exception.  Pl.'s Resp. to

Def.'s Objections 7-8.

       Under Rule 56 of the Federal Rules of Civil Procedure, "[a] party may object that the

material cited to support or dispute a fact cannot be presented in a form that would be admissible

in evidence."  Fed. R. Civ. P. 56(c)(2); *Cutting Underwater Techs. USA, Inc. v. Eni U.S.*

*Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012).  Federal Rule of Evidence 602 mandates that

testimony be based on the personal knowledge of the declarant.  Fed. R. Evid. 602.  Personal

knowledge is derived from the declarant's observations and experiences.  *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999).  Additionally, under Federal Rules of Evidence 801, 802, and 803, hearsay—that is, an out-of-court statement offered for the truth of the matter asserted—is not admissible unless it falls under a specific exception listed in Rule 803.  Fed. R. Evid. 801-03.  "A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" is a present sense impression and is an exception to the rule against hearsay.  Fed. R. Evid. 803(1).  For a statement to fall under this present sense exception, the statement must be made nearly contemporaneously to the event described or explained.  *See United States v. Polidore*, 690 F.3d 705, 720 (5th Cir. 2012).

The challenged portion of Plaintiff's Affidavit is inadmissible because Plaintiff lacks a basis in personal knowledge and offers inadmissible hearsay.  Here, the only reason offered for why Plaintiff might know if Nevarez had called in prior to her absences is that Nevarez would "mention that she missed time from work so she could continue receiving public assistance." *See* Pl.'s Aff. 3.  But this does not explain what observations or experiences indicated to Plaintiff that Nevarez had called in prior to her absences.  *See Cantu*, 167 F.3d at 204.  Moreover, this statement is inadmissible hearsay because it is being offered for the truth of the matter asserted— that Nevarez missed work.  *See* Fed. R. Evid. 801; Pl.'s Resp. to Def.'s Objections 7-8 (appearing to concede that this statement is hearsay).  Plaintiff's claim that this hearsay falls under the present sense impression exception is unfounded.  In his Affidavit, attested to in February 2013, Plaintiff is reciting a statement made by Nevarez in 2010 or 2011.  *See* Pl.'s Aff. 4.  There is no indication that Nevarez made this statement in 2010 or 2011 immediately after being absent from work.  Rather, it appears that Nevarez "mention[ed]" this to Plaintiff at some

later time.  *See United States v. Cain*, 587 F.2d 678, 681 (5th Cir. 1979) (statement made

between fifteen and forty-five minutes after the described event was not admissible under present

sense impression exception because of time lapse).  Accordingly, the Court **SUSTAINS**

Defendant's fifth objection.

 Because the Court does not rely on the other contested statements in the Affidavit,

all but Defendant's fifth evidentiary Objection, ECF No. 20, are hereby **DENIED** as moot.  *See*

*Hobbs v. Ketera Techs., Inc.*, 865 F. Supp. 2d 719, 736 (N.D. Tex. 2012) (denying evidentiary

objections as moot when resolving the objections was not necessary to the motion at hand);

*Wuellner Oil & Gas, Inc. v. EnCana Oil & Gas (USA) Inc.*, 861 F. Supp. 2d 775, 787 (W.D. La.

2012) (same).

 **B.** **Defendant's Pleading Objections**

 In its Reply, Defendant argues that Plaintiff has raised two claims that he did not properly

plead in his Petition.  *See* Reply 2-3.  Specifically, Defendant argues that Plaintiff "alleges for

the first time, via his Response, the following [additional] causes of action: (i) a failure to

accommodate; and (ii) a failure to engage in the interactive process."  *Id*. at 2.  Defendant does

not move for summary judgment on or discuss the merits of either claim, but rather, asks the

Court "not [to] consider them" when deciding the Motion.  *Id*. at 3.

 Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff need only plead "a short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  The United States Supreme Court has established that Rule 8 requires that a plaintiff

only assert a "plausible" claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557 (2007).  A claim for failure to accommodate

passes Rule 8(a)(2) muster if the plaintiff alleges that he has a disability and that the defendant denied the plaintiff a reasonable accommodation.  *See Gottesman v. J.H. Batten, Inc.*, 286 F. Supp. 2d 604, 613-614 (M.D.N.C. 2003).  Likewise, a claim for failure to engage in the interactive process passes Rule 8(a)(2) scrutiny if the plaintiff alleges that he has a disability, that he requested a reasonable accommodation, and this accommodation was denied by the defendant without initiating or participating in an interactive process with the plaintiff to develop a reasonable accommodation.  *See Phelps v. Balfour, Commemorative Brands Inc.*, 3:11-CV-00622-CRS, 2013 WL 653542, at *6 (W.D. Ky. Feb. 21, 2013).  *See also Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 734-35 (5th Cir. 1999) (separately analyzing claims for failure to make a reasonable accommodation and failure to engage in the interactive process).

  In this case, Plaintiff has sufficiently pleaded both of these claims in his Petition. Plaintiff has sufficiently pleaded both a claim for failure to accommodate and a claim for failure to engage in the interactive process because he indicated in his Petition that he is disabled by HIV and that "when accommodations were required[,] employees of the Defendant were unwilling to adhere to the requests."  Pl.'s Pet. 3.  *See Glasson v. Res-Care California, Inc.*, 2:05CV02397, 2006 WL 618408, at *3 (E.D. Cal. Mar. 9, 2006) (finding pleadings that "'[d]efendant failed and refused to provide [her] reasonable accommodation for [her] disability,' and '[]defendant failed and refused to engage in [the] good faith . . . interactive, fact gathering process with [her] to ascertain the scope, nature and extent of Plaintiff's need for reasonable accommodation'" not to be so "vague or ambiguous as to preclude Defendant from framing an answer" to state law claims for failure to accommodate and failure to engage in an interactive fact gathering process).  Because Plaintiff's Petition indicates that he is disabled, that he sought

reasonable accommodations, and that Defendant denied these requests, Plaintiff's TCHRA

claims for failure to accommodate and failure to engage in the interactive process are both

present in the Petition.  *See* Pl.'s Pet. 4 (specifically indicating that Plaintiff is bringing claims

under the TCHRA).

 Since Plaintiff sufficiently pleaded a failure to accommodate claim and a failure to

engage in the interactive process claim, Plaintiff did not assert these claims for the first time in

his Response.  Moreover, since Defendant did not move for summary judgment on these claims,

these claims survive summary judgment.

### C. Summary Judgment Standard

 A court must enter summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Weaver v. CCA

Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "A fact is 'material' if its resolution in favor of

one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star

State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232

F.3d 473, 477 (5th Cir. 2000) (per curiam)).  A dispute about a material fact is genuine only "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*,

85 F.3d 187, 189 (5th Cir. 1996).

 "[The] party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*,

477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

A court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, a court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

###        D.        Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on Plaintiff's FMLA claims for wrongful termination, retaliation, and interference, as well as Plaintiff's TCHRA claims for disability discrimination, retaliation, and a hostile work environment. Mot. 3-13. Defendant argues that all of Plaintiff's FMLA claims are barred because Plaintiff was not employed for the amount of

time necessary to be protected under the FMLA. *Id.* at 12-13. Defendant next argues that Plaintiff's TCHRA disability discrimination claim fails because Plaintiff has not made a prima facie case of disability discrimination or offered sufficient evidence of pretext. *Id.* at 4-8. Likewise, Defendant asserts that Plaintiff has not made a prima facie case of retaliation or offered sufficient evidence of pretext. *Id.* at 8-10. Finally, Defendant contends that the evidence that Plaintiff has submitted is not sufficiently severe or pervasive to establish a hostile work environment. *Id.* at 10-12.

Plaintiff, in his Response, states that he has provided sufficient evidence to establish prima facie cases of disability discrimination and retaliation, pretext, and a hostile work environment. *See* Resp. 2-17. Also in his Response, Plaintiff specifically states that he is abandoning his FMLA claims. *Id.* at 1. Accordingly, summary judgment is granted as to Plaintiff's FMLA claims. *See Coleman v. C R England, Inc.*, 308-CV-0180-B, 2009 WL 812077, at *2 (N.D. Tex. Mar. 27, 2009) (granting summary judgment on a claim that the plaintiff specifically abandoned). The Court now considers whether summary judgment should be granted as to Plaintiff's remaining TCHRA disability discrimination, retaliation, and hostile work environment claims.

### 1.    Texas's employment discrimination law

The TCHRA prohibits employment discrimination on the basis of "race, color, disability, religion, sex, national origin, or age . . . ." Tex. Lab. Code Ann. § 21.051 (West 2011). The TCHRA is interpreted "in a manner consistent with federal laws prohibiting employment discrimination." *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 530 (S.D. Tex. 1999) (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996)). Therefore, when

evaluating TCHRA claims, a court may look to analogous federal laws—such as Title VII and the ADA.  *See, e.g.*, *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403-04 (5th Cir. 1999) (analyzing TCHRA and Title VII claims solely on the basis of Title VII law); *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474 (5th Cir. 2006) (analyzing a TCHRA claim under ADA case law).

> ### 2.      Plaintiff's TCHRA disability discrimination claim

Plaintiff explains that Defendant repeatedly discriminated against him because of his HIV disability.  *See* Resp. 3-5.  According to Plaintiff, this discrimination started early in his tenure when manager Rivera revealed, without consent, Plaintiff's HIV status to other employees.  *Id*. at 4 (citing Pl.'s Aff.; Pl.'s App. Ex. 6).  This pattern of discrimination continued after Plaintiff's HIV-related medical leave in the spring of 2011.  *See id*. at 4-5 (citing Pl.'s Aff.).  When he returned from this leave and would feel sick at work, Plaintiff would notify manager Estrada that he needed to go home.  *Id*. at 3 (citing Pl.'s Aff.).  When he made such requests, Estrada would give him "grief" and "ask [him] if [he] was 'seriously doing this again.'"  Pl.'s Aff. 2. According to Plaintiff, this discrimination further manifested itself when Plaintiff was suspended for five days for violating the clean desk policy by having a cellular telephone at his desk.  *See* Resp. 4 (citing Pl.'s Aff.).  Plaintiff explains that he used his cellular telephone as a timer to remind him when to take his HIV medications.  *Id*. (citing Pl.'s Aff.).  According to Plaintiff, "[o]ther employees would use their cell phones to [send] text messages to people during work hours."  Pl.'s Aff. 3.  In sum, Plaintiff contends that this disability discrimination was the true motivation for his termination.  *See* Resp. 5.

A plaintiff alleging disability discrimination under the TCHRA can overcome a motion for summary judgment in one of two ways. Either the plaintiff can produce direct evidence of disability discrimination, or the plaintiff can offer circumstantial evidence of disability discrimination, which requires the court to engage in the familiar three-step burden-shifting analysis created by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Richards v. Seariver Mar. Fin. Holdings, Inc.*, 59 F. Supp. 2d 616, 623-24 (S.D. Tex. 1998) (citing *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994)).

### a.   Direct evidence

Defendant contends that "Plaintiff points to no acts or statements [by Defendant's employees] that would sufficiently constitute direct evidence." Reply 4. Specifically, Defendant argues that Plaintiff's direct evidence is not sufficient and is nothing more than "conclusory" and does not show "without inference . . . the existence of discrimination." *Id*. at 3.

Plaintiff, meanwhile, contends that the allegations detailed above—Defendant's disclosure of his HIV status, its unwillingness to accommodate him, its employees giving him "grief," and its selective enforcement of the clean desk and attendance policies—are direct evidence of disability discrimination. Resp. 3-5.

Direct evidence of discrimination "is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). Direct evidence arises "[i]n the rare situation in which the evidence establishes that an employer *openly* discriminates against an individual." *Ramirez v. Sloss*, 615 F.2d 163, 168 (5th Cir. 1980) (emphasis added). In the

context of disability discrimination, this is a high threshold and usually is evidenced by a statement or a document, that on its face, shows the employer's intention to discriminate based on disability. *See Richards*, 59 F. Supp. 2d at 624-25 (citing *Rizzo v. Children's World Learning Ctr., Inc.*, 84 F.3d 758 (5th Cir. 1996)).

Here, Plaintiff has not produced direct evidence of disability discrimination. None of the evidence that Plaintiff labels as direct evidence openly shows an intent to discriminate against Plaintiff because of his HIV status. *See Sloss*, 615 F.2d at 168. Plaintiff has offered no evidence that on its face shows that Defendant's policies and actions were motivated by his HIV status. *See Rizzo*, 84 F.3d at 760-61.

### b.    *McDonnell Douglas*

If there is no direct evidence of discrimination, TCHRA claims for disability discrimination are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 791-96 (S.D. Tex. 2004) (applying the *McDonnell Douglas* framework to a TCHRA disability discrimination claim).

The *McDonnell Douglas* framework is used to analyze a claim of disability discrimination where indirect evidence might support a finding of prohibited discrimination, even if no "direct proof" is available. *See McDonnell Douglas*, 411 U.S. at 792. Under this framework, the complaining employee must first establish a prima facie case of disability discrimination. *See id.* at 802. If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* If the employer meets this burden, the plaintiff can challenge the veracity and adequacy of the employer's proffered nondiscriminatory reason in

16

order to demonstrate that it is a mere pretext for unlawful discrimination.  *See id*.  The plaintiff

can attack the employer's reason by showing either: (1) that the reason, and the purported facts

underlying it, are simply not true; or, (2) that even though the reason and the facts behind it are

true, the stated reason "is not the only reason" for the adverse employment action and that a

"motivating factor" was the plaintiff's "protected characteristic."  *Alvarado v. Tex. Rangers*, 492

F.3d 605, 611 (5th Cir. 2007); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).

      Different quantities of evidence are required to meet these burdens at summary judgment.

First, the plaintiff must produce enough evidence to demonstrate his prima facie case by a

preponderance of the evidence.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-10 (1993)

(wherever "reasonable minds could differ as to whether a preponderance of the evidence

establishes the facts of a prima facie case, then a question of fact does remain, which the trier of

fact will be called upon to answer").  "Only a minimal showing is necessary to meet this [prima

facie] burden."  *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999); *Henderson v.

Univ. of Texas M.D. Anderson Cancer Ctr.*, 01-08-00376-CV, 2010 WL 4395416, at *5 (Tex.

App. Nov. 4, 2010).  Second, the employer only needs to proffer a legitimate, nondiscriminatory

reason for terminating the plaintiff.  *Reeves*, 530 U.S. at 142-43 (noting that this burden "is one

of production, not persuasion, it can involve no credibility assessment"); *Patrick v. Ridge*, 394

F.3d 311, 315 (5th Cir. 2004) ("[T]he employer need not prove that it was actually motivated by

its proffered reason.") (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981));

*Henderson*, 2010 WL 4395416, at *3.  And third, the plaintiff in a discrimination case must

demonstrate through sufficient evidence that the proffered legitimate, nondiscriminatory reason

is pretext or that disability was a "motivating factor" in his termination.  *Alvarado*, 492 F.3d at

611; *Seaman*, 179 F.3d at 300; *Deocariza v. Cent. Tex. Coll. Dist.*, 03-06-00653-CV, 2008 WL

2468682, at *6 (Tex. App. June 19, 2008).

### 1.      Prima facie case of disability discrimination

Defendant disputes that Plaintiff has made a prima facie case of disability discrimination

because, according to Defendant, Plaintiff "cannot prove that he has a disability . . . [and] he has

no evidence that others similarly situated were treated more favorably."  Mot. 4.  Plaintiff, in

response, contends that he has made a prima facie case of disability discrimination because HIV

is a disability that limits his major life functions, he was discriminated against because of his

HIV status, and the reason for his termination was his HIV status.  *See* Resp. 3-7.

To establish a prima facie case of disability discrimination under the TCHRA, a plaintiff

must establish that "(1) [sh]e is disabled or is regarded as disabled; (2)[s]he is qualified for the

job; (3)[s]he was subjected to an adverse employment action on account of h[er] disability; and

(4)[s]he was replaced by or treated less favorably than non-disabled employees."  *Miles-*

*Hickman v. David Powers Homes, Inc.*, 589 F. Supp. 2d 849, 858 (S.D. Tex. 2008) (citing

*Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003)) (alterations in original);

*Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001).  Here, Defendant only contests whether

Plaintiff has established the first and fourth elements.  *See* Mot. 4-5.

As to the first element of a prima facie case of disability discrimination, the parties

contest whether Plaintiff's HIV condition is a disability.  Defendant claims that "Plaintiff is

unable to offer evidence to establish that he experienced any HIV-related impairments that

substantially limit him in a major life activity . . . ."  *Id*. at 4-5.  To support this position,

Defendant cites to *Blanks v. Southwestern Bell Communications, Inc.*, 310 F.3d 398, 401 (5th

Cir. 2002), a case in which the United States Court of Appeals for the Fifth Circuit found that a

HIV-positive plaintiff had not established that he had a disability under the ADA because the

plaintiff "fail[ed] to assert that his HIV status substantially impaired [a] major life activity . . . ."

*Id*. at 4 (citing *Blanks*, 310 F.3d at 401).  Plaintiff responds that HIV affects "his life functions

including sleeping, working, and mental functions . . . ."  Resp. 6.  To support this position,

Plaintiff relies upon his Affidavit, in which he states that he is "unable to sleep because of [his]

illness," that he "suffers from frequent illness and side effects from [his] medication that require

[him] to take time off from work," and that his medications "negatively affected [his] demeanor

and caused psychological side effects."  Pl.'s Aff. 1.

      The TCHRA defines a disability as "a mental or physical impairment that substantially

limits at least one major life activity of that individual, a record of such an impairment, or being

regarded as having such an impairment."  Lab. § 21.002(6).  A major life activity is defined by

the TCHRA to include "caring for oneself, performing manual tasks, seeing, hearing, eating,

sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

concentrating, thinking, communicating, and working."  *Id*. § 21.002(11-a).  Moreover, the

TCHRA was amended in 2009 to reflect Congress' expansion of the ADA, as codified in the

ADA Amendments Act of 2008 ("ADAAA").  *See* H.R. 978, 81st Leg., Reg. Sess. (Tex. 2009)

(amendments to the TCHRA); Pub. L. No. 110-325, 122 Stat. 3553 (the ADAAA); *Molina v.

DSI Renal, Inc.*, 840 F. Supp. 2d 984, 993 (W.D. Tex. 2012) (discussing the amending and

expansion of the TCHRA).  One purpose of the ADAAA was to "make it easier for people with

disabilities to obtain protection under the ADA" by broadly construing the "definition of

'disability.'"  29 C.F.R. § 1630.1(c)(4).  Additionally, the term "substantially limits" found in the

TCHRA and the ADAAA is to be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." *Id*. § 1630.2(j)(1)(i); *Morrison v. Pinkerton Inc.*, 7 S.W.3d 851, 856 (Tex. App. 1999) (also looking to 29 C.F.R. § 1630.2(j) to define 'substantially limits' in a TCHRA case).

In this case, Plaintiff has offered evidence that his HIV condition affects major life activities. Plaintiff has indicated that HIV affects his sleep, work hours, and mental functions. *See* Pl.'s Aff. 1. Sleeping, working, and mental functions, such as thinking, are all major life activities. *See* Lab. § 21.002(11-a) (defining sleeping, working, concentrating, and thinking as major life activities); *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 616 (5th Cir. 2009) ("We conclude that sleeping and thinking are major life activities."); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995) (holding that working is a major life activity).

Moreover, Plaintiff has offered sufficient evidence that his HIV condition affects at least one of these major life activities—that is, his sleeping—in a substantially limiting manner. Plaintiff indicates that he is "unable to sleep" because of his illness. Pl.'s Aff. 1. Other courts have found similar pleadings to indicate a substantial limitation. *See Palacios v. Cont'l Airlines, Inc.*, H-11-3085, 2013 WL 499866, at *4 (S.D. Tex. Feb. 11, 2013) (finding claims of "too much" sleep and "not [being able to] sleep" were sufficient under the ADAAA to indicate a substantial limitation); *Kurth v. Gonzales*, 472 F. Supp. 2d 874, 881 (E.D. Tex. 2007) (finding claims of short sleep time and nightmares were sufficient under the ADA to indicate a substantial limitation). Therefore, the Court finds that a reasonable jury could conclude that Plaintiff is disabled because he has presented sufficient evidence indicating that HIV substantially limits his

ability to sleep.  *See St. Mary's*, 509 U.S. at 509-10; 29 C.F.R. § 1630.2(j)(1)(i) (broadly construing the scope of "substantially limits").

As to the fourth element of a prima facie case of disability discrimination, the parties contest whether Plaintiff was treated less favorably than similarly situated employees. Defendant argues that Plaintiff offers "no admissible evidence that others similarity situated received more favorable treatment."  Reply 5.  With respect to the attendance policy, Defendant notes that "Plaintiff has no evidence that any other employee of [Defendant] violated the [attendance policy] twice and was not terminated."  Mot. 5.

Plaintiff responds by arguing that he was treated less favorably than similarly situated employees with regard to a number of policies, including the clean desk and attendance policies. *See* Resp. 3-5.  To support this position, Plaintiff offers a fellow employee, Christy Nevarez, as a comparator.  *See id*. at 5.  Plaintiff notes that a "fellow employee, Christy Nevarez, would not report to work and not call in.  Nevarez was not terminated for violating the [attendance] policy." *Id*.  Although he does not cite to any evidence in the record for this statement, Plaintiff seemingly relies on his Affidavit for support.  *See id*.  Specifically, Plaintiff appears to be relying on the portion of his Affidavit in which he states that "I know that Christy [Nevarez] would often not show up to work and would not call in to report her absences.  I know this because Christy [Nevarez] would mention that she missed time from work so she could continue receiving public assistance."  Pl's Aff. 3.

To show that he was treated less favorably than similarly situated employees, a plaintiff must offer evidence "that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged in by other employees."  *Okoye v. Univ. of Tex. Houston Health Sci.*

*Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (discussing a prima facie case of racial discrimination under Title VII) (internal quotation marks omitted); *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 918 (Tex. 2005).  When a plaintiff compares his treatment to that of a fellow employee, a court evaluates the similarity of the plaintiff and the comparator on whether the two (1) "held the same job or responsibilities;" (2) "shared the same supervisor or had their employment status determined by the same person;" (3) "have essentially comparable violation histories;" and (4) "critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions."  *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008) ("Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'").

Here, Plaintiff has not presented sufficient evidence indicating that he was treated less favorably than similarly situated employees with regard to the attendance policy for which he was terminated.  *See Okoye*, 245 F.3d at 514.  Although Plaintiff offers Nevarez as a comparator, Plaintiff has failed to show that he and Nevarez are similarly situated for a number of reasons. *See* Resp. 3-5.

First, Plaintiff never proffers evidence suggesting that he and Nevarez held the same job or responsibilities.  Rather, Plaintiff has only indicated Nevarez was a "fellow employee."  *See* Pl.'s Aff. 3.  This broad allegation is not specific enough to suggest that Plaintiff and Nevarez were similarly situated within the workplace.  *See Clark v. Wright Buick Pontiac GMC*, 9-11-CV-12, 2012 WL 1555447, at *1 n.1 (E.D. Tex. Apr. 30, 2012) (finding a plaintiff's "general

statement that virtually all other persons [who] were retained or hired does not in any way

suggest that the other employees had the same job, responsibilities, or qualifications”).

Second, the evidence offered seems to indicate that Plaintiff and Nevarez had different

supervisors.  In his Affidavit, Plaintiff indicates that manager Rivera supervised Nevarez and

allowed her an exception to the clean desk policy.  *See* Pl.’s Aff. 3.  However, Plaintiff was

terminated for violating the attendance policy by manager Estrada.  *See* Resp. Ex. 13, at 1 (notice

of termination signed by manager Estrada).  This difference in supervisors suggests that Plaintiff

was not similarly situated to Nevarez.  *See Wyvill v. United Companies Life Ins. Co.*, 212 F.3d

296, 302-03 (5th Cir. 2000) (finding comparators not to be similarly situated to the plaintiff, in

part, because they were supervised by different managers than the plaintiff).

Third, Plaintiff has offered no evidence regarding the violation history of Nevarez.

Therefore, because the Court cannot compare Plaintiff’s violation history to Nevarez’s violation

history, the Court cannot conclude that Plaintiff was similarly situated to Nevarez.  *See Brooks v.*

*Lubbock Cnty. Hosp. Dist.*, 373 F. App’x 434, 437 (5th Cir. 2010) (finding comparators not to be

similarly situated, in part, because the plaintiff failed to show that the comparators had

comparable violation histories).

Fourth, Plaintiff has not demonstrated that his violations of the attendance policy were

“nearly identical” to Nevarez’s violations.  *See Lee*, 574 F.3d at 260.  Plaintiff’s only proffered

evidence indicating that Nevarez violated the attendance policy, but was not terminated, is his

statement regarding Nevarez in his Affidavit.  *See* Resp. 3-5.  As discussed above, the Court has

sustained Defendant’s objection to this statement on hearsay and basis in personal knowledge

grounds.  But even if the Court were to find this statement admissible, the statement does not

indicate that Plaintiff's violation of the attendance policy was sufficiently similar to Nevarez's. This is because the statement does not reveal anything about how many times Nevarez violated the policy or what discipline Nevarez may have received for violating the policy. *See Lee*, 574 F.3d at 261 (finding a comparator not to be similarly situated, in part, because his "offenses and his employment history [were] too dissimilar to those for which [the plaintiff] was fired"). For all these reasons, the Court finds that Plaintiff has not offered sufficient evidence indicating that he was treated less favorably than any similarly situated employee with regard to the attendance policy. *See id*. at 260.

Accordingly, Plaintiff has failed to establish that he was treated less favorably than similarly situated employees, and therefore, has failed to make a prima facie case of disability discrimination. *See Miles-Hickman*, 589 F. Supp. 2d at 858. As such, summary judgment of Plaintiff's TCHRA disability discrimination claim is appropriate. *See Spinks*, 322 F. Supp. 2d at 796 (grating summary judgment on a TCHRA disability discrimination claim where an element of the prima facie case was not sufficiently established).

### 3.    TCHRA retaliation claim

The TCHRA prohibits an employer from retaliating against an employee who either "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Lab. § 21.055. Briefly, Plaintiff contends that Defendant violated this provision when it terminated him because of his complaints about discrimination in the workplace. *See* Resp. 1 ("Plaintiff's termination was a result of discrimination based upon Plaintiff's disability and retaliation

because Plaintiff complained about discrimination, requested accommodations and [a] hostile work environment.").

As with a discrimination claim, a plaintiff alleging retaliation under the TCHRA can overcome a motion for summary judgment in one of two ways.  Either, the plaintiff can produce direct evidence of retaliation, or the plaintiff can produce circumstantial evidence of retaliation and the court must engage in the previously discussed *McDonnell Douglas* burden-shifting analysis.  *See Caruth v. Texas A & M Univ.-Commerce*, 3:12-CV-351-B, 2013 WL 991336, at *13 (N.D. Tex. Mar. 14, 2013) (citing *Stewart v. Sanmina Texas L.P.*, 156 S.W.3d 198, 208 (Tex. App. Feb. 14, 2005)); *Acosta v. City of Austin*, 03-08-00788-CV, 2010 WL 2629873, at *2 (Tex. App. June 30, 2010).  Unlike his disability discrimination claim, Plaintiff does not contend that he has direct evidence of retaliation.  *See generally* Resp.

### a.  *McDonnell Douglas*

Because Plaintiff does not offer direct evidence of retaliation, the Court evaluates Plaintiff's retaliation claim under the *McDonnell Douglas* framework.

### 1.  Prima facie case of retaliation

Defendant summarily states that Plaintiff cannot establish a prima facie case of retaliation because "he has no evidence that he engaged in a protected activity" and "he cannot establish a causal connection between any alleged protected activity and an adverse employment action." Reply 6-7.  Plaintiff contends, however, that he has made a prima facie case of retaliation because "Defendant retaliated against the Plaintiff after he complained of discrimination based on his disability."  Resp. 4.

To make a prima facie case of retaliation under the TCHRA, a plaintiff must show "that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Ellini v. Ameriprise Fin., Inc.*, 881 F. Supp. 2d 813, 824 (S.D. Tex. 2012) (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)). The plaintiff must make this prima facie case of retaliation under the TCHRA by a preponderance of the evidence. *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 295 (Tex. App. 2000). Here, Defendant only contests whether Plaintiff has established the first and third elements.[2] *See* Mot. 9.

As to the first element of a prima facie case of retaliation, the parties contest whether Plaintiff engaged in a protected activity. Defendant summarily asserts that Plaintiff "is unable to articulate any 'protected activity' that he engaged in or when allegedly engaged in such an activity.'" Mot. 9; Reply 6 (stating that Plaintiff "has no evidence that he engaged in a protected activity"). Plaintiff meanwhile asserts that he engaged in a protected activity when he complained of discrimination related to his HIV condition. *See* Resp. 4. As indicated in his Affidavit, Plaintiff complained of discrimination three times: first in November 2010, after his HIV status had been disclosed, when he "called the corporate complaint line to complain about discrimination"; second in March 2011, when he told supervisor Estrada, "that she was discriminating against [him] because of [his] HIV status"; and third in June 2011, after being

---

[2] While the parties do not contest whether Plaintiff has established the second element of a prima facie case of retaliation, Defendant appears to misunderstand the adverse employment action that Plaintiff was subject to. Defendant, in its Motion, implies that the adverse employment action is Plaintiff's suspension for violating the clean desk policy. *See* Mot. 9-10. However, Plaintiff succinctly states that the adverse employment action is his ultimate termination. Resp. 1 ("Plaintiff's termination was a result of discrimination based upon Plaintiff's disability and *retaliation* because Plaintiff complained about discrimination, requested accommodations and [a] hostile work environment.") (emphasis added).

suspended for having a cellular phone on his desk to remind him of when to take his HIV medications, when he "called the corporate hotline to complain about [this] disparate" enforcement of the clean desk policy.  Pl.'s Aff. 2-3.

Filing a complaint with an employer is a protected activity under the TCHRA if the complaint puts the employer on notice that the complaint concerns conduct, such as discrimination, that is prohibited by the TCHRA.  *See Ellini*, 881 F. Supp. 2d at 825; Lab. § 21.055.  The complaint need not be formal.  *See e.g.*, *Hernandez v. Grey Wolf Drilling, L.P.*, 350 S.W.3d 281, 286 (Tex. App. 2011) (finding that verbal complaints to a supervisor about the supervisor's use of ageist language to be sufficient evidence, at summary judgment, of engagement in a protected activity).  However, the complaint must specify the type of conduct prohibited by the TCHRA.  *See Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (finding a complaint alleging generic harassment did not give notice of racial or sexual harassment).

Here, Plaintiff has presented sufficient evidence indicating that he engaged in a protected activity three times when he complained of discrimination based on his HIV status in November 2010, March 2011, and June 2011.  *See* Pl.'s Aff. 2-3.  In Plaintiff's March 2011 complaint, he specifically complained to a manager about discrimination based on HIV.  Pl.'s Aff. 2.  Similarly, in Plaintiff's June 2011 complaint, he appears to have complained of "disparate" enforcement of the clean desk policy that was related to his HIV status and medications.  *See id*. at 3.  Because disability discrimination is prohibited by the TCHRA, Plaintiff, therefore, has presented sufficient evidence that he engaged in a protected activity when he complained of discrimination based on his HIV status.  *See Hernandez*, 350 S.W.3d at 286 (Tex. App. 2011)

(finding verbal complaints, similar to Plaintiff's March 2011 verbal complaints, to be sufficient evidence, at summary judgment, of engagement in a protected activity).

As to the third element of a prima facie case of retaliation, the parties dispute whether Plaintiff has established a causal connection between his complaints of discrimination and an adverse employment action. Defendant simply states that "Plaintiff cannot establish a causal connection between any alleged protected activity and an adverse employment action." Mot. 9; Reply 6-7 (stating that Plaintiff "cannot establish a causal connection between any alleged protected activity and an adverse employment action"). To support this conclusion, Defendant states that temporal proximity alone is not sufficient to establish a "but for" causal connection. Mot. 9 (citing *McCullough v. Houston Cnty. Tex.*, 297 Fed. App'x 282, 288-89 (5th Cir. 2008)). Plaintiff, meanwhile, appears to indicate that there was temporal proximity between his complaints and his termination. *See* Resp. 1, 4-5.

A causal connection is "demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Martin*, 65 F. Supp. 2d at 559. It is well established that a plaintiff can demonstrate the causal connection prong of a prima facie retaliation case by showing temporal proximity between the protected activity and an adverse employment consequence.[3] *Fields v. Teamsters Local Union No. 988,* 23 S.W.3d 517, 529 (Tex. App. 2000) (finding temporal proximity to show a causal connection in a TCHRA retaliation case); *Caldera v. Cnty. of El Paso, Tex.*, 520 F. Supp. 2d 846, 857 (W.D. Tex. 2007) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). In

---

[3] Defendant's reliance on *McCullough* is misplaced. *McCullough* specifically states, "[t]he causal link required by the third prong [of a retaliation claim] does not rise to the level of a 'but for' standard at the prima facie stage." 297 F. App'x at 288.

the Fifth Circuit, "'a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes.'" *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (quoting *Weeks v. NationsBank, N.A.*, 3:98-CV-1352M, 2000 WL 341257, at *3 (N.D. Tex. 2000)).  Additionally, there must be some evidence that the decision maker responsible for the adverse employment consequence was aware of the protected activity. *Turner v. Jacobs Eng'g Group, Inc.*, 470 F. App'x 250, 253 (5th Cir. 2012) (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 & n.6 (5th Cir. 2003)).

Here, both the time and knowledge requirements are met.  First, the less than one-month time lapse between Plaintiff's most recent complaint, in June 2011, and his termination that same month are sufficient to show a causal connection.  *See Evans*, 246 F.3d at 354 (allowing up to a four-month time lapse).  Likewise, the less than three-month time lapse between Plaintiff's March 2011 complaint and his June 2011 termination also shows a causal connection.  *See id*. Second, Plaintiff was fired by manager Estrada, who undoubtedly had knowledge of Plaintiff's March 2011 discrimination complaint, since Plaintiff complained directly to her.  *See* Resp. Ex. 13, at 1 (notice of termination signed by manager Estrada).  Accordingly, Plaintiff has established a causal connection between his complaints of discrimination and his termination through temporal proximity.  *See Martin*, 65 F. Supp. 2d at 559.

Because Plaintiff has adequately demonstrated the elements of a prima facie case of retaliation, the Court finds that Plaintiff has met its initial *McDonnell Douglas* burden.  *See St. Mary's*, 509 U.S. at 509-10.

### 2.   Legitimate, nonretaliatory reason

Because Plaintiff has made a prima facie showing of retaliation under the *McDonnell Douglas* framework, the burden now shifts to Defendant to show evidence of a legitimate, nonretaliatory reason for Plaintiff's termination. *See Reeves* 530 U.S. at 142-43; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

In this case, Defendant's proffered justification for Plaintiff's termination is Plaintiff's violation of Defendant's attendance policy.[4] Reply 8 ("Plaintiff was ultimately terminated for his second no-call/no-show"); Mot. Ex. 14, at 1 (employee records indicating that Plaintiff was terminated because of violations of the attendance policy). Numerous courts have found that violation of an attendance policy to be a legitimate, nonretaliatory reason for discharging an employee. *See, e.g.*, *Dortch v. Mem'l Herman Healthcare Sys.-Sw.*, 525 F. Supp. 2d 849, 865 (S.D. Tex. 2007) (citing *Davis v. Moore Wallace, Inc.*, 217 F. App'x 313, 316 (5th Cir. 2007)).

Accordingly, Defendant has met its burden of producing a legitimate, nonretaliatory reason for terminating Plaintiff. *See Reeves*, 530 U.S. at 142-43.

### 3. Evidence of pretext

Because Defendant has successfully articulated a legitimate reason for Plaintiff's termination, the burden now shifts back to Plaintiff to show an issue of fact as to whether Defendant's reason is pretext by showing that "the adverse employment action taken against [Plaintiff] would not have occurred 'but for' [his] protected conduct." *Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 776 (S.D. Tex. 2009) (citing *Septimus v. Univ. of Houston*,

---

[4] As discussed above, Defendant appears to misunderstand the adverse employment action that Plaintiff was subject to. Plaintiff's retaliation claim is a result of his ultimate termination, not his suspension for violating the clean desk policy. *See* Resp. 1. Regardless, Defendant, in both its Motion and its Reply, indicates that Plaintiff's termination can be explained by a legitimate non-retaliatory reason—that is, violations of the attendance policy. *See* Mot. 5-6; Reply 7-9.

399 F.3d 601, 608 (5th Cir. 2005)); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th

Cir. 2004).  In a retaliation case, a plaintiff meets this "but for" requirement by providing

"'[p]roof that the defendant's explanation is unworthy of credence.'" *Pennington v. Tex. Dept. of*

*Family & Protective Svcs.*, 469 F. App'x 332, 337 (5th Cir. 2012) (quoting *Reeves*, 530 U.S. at

147).  This proof may consist of a combination of evidence of temporal proximity, statements

indicating hostility for engaging in a protected activity, and other case-specific evidence that

suggests that the employer's articulated reason is not true.  *See Evans*, 246 F.3d at 356 (5th Cir.

2001) (finding that evidence of backdating of performance reviews and temporal proximity were

sufficient evidence of pretext); *Shackelford*, 190 F.3d at 409 ("Indeed, the combination of

suspicious timing with other significant evidence of pretext, can be sufficient to survive

summary judgment."); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992) (upholding

a district court's finding of pretext when a supervisor routinely harassed an employee for filling

an EEOC complaint).

　　　　Again, the parties dispute whether Plaintiff has provided sufficient evidence of pretext.

Plaintiff indicates that Defendant's rationale for terminating him is pretext because he had a valid

reason for having a cellular telephone at his desk, because he was a good employee, and because

Defendant resisted his medically necessitated requests to modify his schedule.  *See* Resp. 14-17.

Defendant states that Plaintiff has not carried his burden and has only offered a "statement of the

legal possibilities without explaining if or how any of these possibilities apply to the case at

hand."  Reply 8.

　　　　Here, Plaintiff has provided an internal email authored by one of Plaintiff's manager,

Roberts, that suggests that Defendant's proffered reason for terminating Plaintiff is pretext.  *See*

Resp. Ex. 10, at 2 ("Roberts Email" or "Email").  The Roberts Email is dated May 24, 2011,

which is one month before Plaintiff was terminated.  *See id*.  In the Email, Roberts writes to

another supervisor and asks, "[h]ow would we go about holding [Plaintiff] accountable for not

meeting his schedule if he provides documentation and has a note from his doctor that he will be

sick from time [to] time?  He is affecting our hours on a program."  *Id*.  A reasonable inference

to be drawn from this Email is that Defendant was searching for reasons, such as the attendance

policy, to terminate Plaintiff.  *See Koppman v. S. Cent. Bell Tel. Co.*, 90-4503, 1992 WL 142390,

at *7-8 (E.D. La. June 17, 1992) (finding, in an age discrimination case, that an internal memo

stating that female employees over the age of forty were an "area of concern" could be

innocuous but because "more ominous inferences could reasonably be drawn" from the memo,

summary judgment could not be granted).  Even though the Email seems to suggest that

Plaintiff's termination was premised on his disability and not his prior complaints, this

nonetheless indicates that Defendant's proffered reason for terminating Plaintiff—that he

violated the attendance policy—is not the real reason for his termination, is "unworthy of

credence," and therefore is evidence of pretext.  *See Pennington*, 469 F. App'x at 337.

   The Email could be further evidence of pretext because manager Roberts authored it.

Roberts investigated Plaintiff's November 2010 internal complaint about the disclosure of his

HIV status.  *See* Def.'s Proposed Undisputed Facts ¶ 6; Pl.'s Resp. to Def.'s Proposed Facts ¶ 6.

While the Email does not directly reference Plaintiff's prior complaint, a reasonable jury could

conclude that it may have been motivated by Plaintiff's prior complaint.  *See Man Roland*, 438

F.3d at 478-79; *Winchester v. Galveston Yacht Basin*, 1997 WL 367683, at *3 (5th Cir. 1997)

(suggesting that a memorandum linking the termination of an employee with the employees' prior protected activity could potentially be evidence of pretext).

Additionally, the fact that the same supervisor, Estrada, was involved in both Plaintiff's protected activity and the termination of his employment is also evidence of pretext. As discussed above, Plaintiff, in March 2011, told manager Estrada, "that she was discriminating against [him] because of [his] HIV status." Pl.'s Aff. 2. Estrada also terminated Plaintiff's employment. *See* Resp. Ex. 13, at 1 (notice of termination signed by Estrada). In a similar case where an employee had lodged "complaints against her supervisors," and "these same supervisors" subjected the employee to a series of adverse measures, the United States District Court for the Southern District of Mississippi recently held that a reasonable juror might therefore infer retaliation. *Duhon v. Napolitano*, 1:11-CV-334, 2013 WL 704894, at *7 (S.D. Miss. Feb. 26, 2013). Such an inference would also be permissible here based on the involvement of Estrada in both the protected activity and the termination of Plaintiff's employment.

Finally, the timing of the Email and Plaintiff's termination, in relation to his prior complaints of discrimination, is also evidence of pretext. While there is no evidence that suggests that Roberts was involved in Plaintiff's March 2011 complaint, this Email was sent in May 2011, only two months after Plaintiff had complained to manager Estrada of discrimination related to his HIV condition. *See* Pl.'s Aff. 2-3. This temporal proximity coupled with the other evidence of pretext, it suggests that Plaintiff's proffered reason for terminating plaintiff is not true. *See Whitaker v. FedEx Freight, Inc.*, --- F. Supp. 2d ----, 10-428-BAJ, 2012 WL 4460747, at *9 (M.D. La. Sept. 26, 2012) (finding a gap of five months from a plaintiff's EEOC complaint

to his termination, coupled with additional evidence of pretext during this timeframe, indicated that the defendant's proffered reason for termination was not true).  Moreover, the timing of Plaintiff's termination in relation to his last complaint of discrimination is further evidence suggesting that Plaintiff's termination for violating the attendance policy was pretext.  As discussed above, Plaintiff called a corporate hotline sometime after June 10, 2011, to complain about unequal enforcement of the clean desk policy.  Pl.'s Aff. 3.  Within a matter of days of making this complaint, Plaintiff was terminated on June 23, 2011.  *Id.*  The immediate temporal proximity between Plaintiff's complaint and his termination, in aggregation with the other evidence of pretext, indicates that Defendant's proffered reason for termination is not true.[5] *Shackelford*, 190 F.3d at 408-09 (finding plaintiff's termination, which occurred the same day that she engaged in a protected activity, to be a reason to "doubt" the proffered rationale for her termination).

Therefore, because Plaintiff has offered sufficient evidence indicating that Defendant's proffered reason is pretext, Plaintiff's claim of retaliation must be submitted to a jury.  *See Richardson*, 434 F.3d at 332-33; *Davis*, 383 F.3d at 319.

### 4.    TCHRA hostile work environment claim

Plaintiff contends that he was subject to a hostile work environment when manager Rivera, in November 2010, allegedly disclosed his HIV status to his co-workers.  *See* Resp. 6-7.  As a result of this disclosure, Plaintiff claims he was "ridiculed and harassed."  *Id*. at 7.  Defendant counters that Plaintiff's claim is insufficient because he has not demonstrated "that he

---

[5] There is similar temporal proximity between Plaintiff's March 2011 complaint and his termination.

was subject to severe and pervasive harassment that altered the conditions of his employment."
Reply 9-10.

To make a prima facie showing of hostile work environment, a plaintiff must show: (1)
he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the
harassment was based on his membership in the protected class; (4) the harassment affected a
term, condition, or privilege of employment; and (5) the employer knew or should have known
of the harassment and failed to take adequate remedial action. *Harvill v. Westward Commc'ns,
L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). Where the alleged harassment is perpetrated by a
supervisor with immediate or successively higher authority, as is the case here, the employee
need only satisfy the first four elements set forth above. *Watts v. Kroger Co.*, 170 F.3d 505, 509
(5th Cir. 1999).

"To affect a term, condition, or privilege of employment, the harassing conduct 'must be
sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an
abusive working environment.'" *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir.
2008) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)).
The work environment must be "both objectively and subjectively offensive, one that a
reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be
so." *Id.* In determining whether a hostile or abusive work environment exists, a court assesses
the totality of the circumstances, including: (1) the frequency of the conduct; (2) the severity of
the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive
utterance; and (4) whether the conduct unreasonably interferes with an employee's work
performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Alániz v. Zamora-Quezada*,

591 F.3d 761, 771 (5th Cir. 2009).  Merely offensive conduct, however, is not actionable.

*Harris*, 510 U.S. at 21.  Moreover, conclusory allegations of a hostile work environment will not

suffice.  *See Bryan v. Chertoff*, 217 F. App'x 289, 294 (5th Cir. 2007).

Here, because he cannot show that the conduct of Defendant's employees affected a term,

condition, or privilege of employment, Plaintiff has not provided sufficient evidence of a hostile

or abusive work environment.  Plaintiff's Response states he was "ridiculed and harassed

because of his HIV status."  Resp. 7.  However, Plaintiff never offers any evidence of this, even

in his own Affidavit.  *See generally* Pl.'s Aff.  In fact, Plaintiff's own Affidavit only contains the

statement that he "believe[s] the actions of Ms. Rivera and Ms. Roberts [in disclosing his HIV

status] were discriminatory and caused a hostile work environment for me."  Pl.'s Aff. 2.  Such

conclusory statements are not sufficient to establish a hostile work environment.  *Bryan*, 217 F.

App'x at 294.  The conduct Plaintiff alleges appears not to be frequent and does approach the

severity that Fifth Circuit case law demands.  *See McKee v. Lang*, 393 F. App'x 235, 239 (5th

Cir. 2010) (surveying Fifth Circuit cases discussing severity); *Liddell v. Northrop Grumman*

*Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 461 (S.D. Miss. 2011) ("[O]ffhand comments and

isolated incidents, unless extremely serious, will not amount to discriminatory charges which can

survive summary judgment.").  In addition, Plaintiff offers no evidence, other than stating that he

once felt "embarrassed," that would indicate that his co-workers' conduct was physically

threatening or humiliating.  *See* Pl.'s Aff. 2.  Finally, there is no evidence that the conduct at

issue unreasonably interfered with Plaintiff's work performance.  *See Slay v. Glickman*, 137 F.

Supp. 2d 743, 751 (S.D. Miss. 2001) (granting summary judgment on a hostile work

environment claim, in part, because the plaintiff had "not presented any evidence to show that

these alleged offensive contacts interfered with her work performance"). For all these reasons, Plaintiff cannot show that the conduct of Defendant's employees affected a term, condition, or privilege of employment, and therefore he has not sufficiently demonstrated a hostile or abusive work environment. *See Harris*, 510 U.S. at 23.

Therefore, because Plaintiff cannot make a prima facie showing of a hostile work environment, the Court grants summary judgment with respect to Plaintiff's TCHRA hostile work environment claim. *See Liddell*, 836 F. Supp. 2d at 462.

## III.   CONCLUSION

For the foregoing reasons, Defendant's Motion, ECF No. 14, is **GRANTED** in part and **DENIED** in part. The Motion is granted as to all of Plaintiff's FMLA claims, Plaintiff's TCHRA disability discrimination claim, and Plaintiff's TCHRA hostile work environment claim, and denied as to Plaintiff's TCHRA retaliation claim. Additionally, for reasons articulated above, all but Defendant's fifth evidentiary Objection, ECF No. 20, are also **DENIED** as moot.

**SO ORDERED.**

SIGNED this 30th day of April, 2013.

_Kathleen Cardone_
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE